**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| STANLEY FLOYD, individually as the Administrator of the Estate of JASMINE FLOYD, and next friend of KALYN FLOYD and XAVIER FLOYD, minors, DELISA FLOYD, and EBONIE FLOYD, | : : : : : : | |
| Plaintiffs, | : : | |
| vs. | : : | 1:04-CV-154 (WLS) |
| TRAVELERS PROPERTY CASUALTY CORP. OF AMERICA, RAYNOR MANUFACTURING COMPANY, d/b/a RAYNOR GARAGE DOORS, RAYNOR EXPRESS CORP., and TIM MELSNESS, | : : : : : : | |
| Defendants. | : | |

## <u>ORDER</u>

Before the Court are Plaintiff's Motion to Withdraw Attorney (Doc. 23), Plaintiffs' Motion for Order to Establish a Qualified Settlement Fund (Doc. 72), Plaintiffs' Motion for Order Approving Plaintiffs' Distribution of Judgment (Doc. 73), Attorney Stanley B. Broussard's ("Attorney Broussard") Motion to Enforce Contingency Agreement (Doc. 82), Plantiffs' Amended Motion for Order Approving Plaintiffs' Distribution of Judgment (Doc. 92), Defendants' Motion to Deny as Moot Plaintiffs' Motion for Order to Establish a Qualified Settlement Fund (Doc. 104), and Plaintiffs' Motion to Withdraw Motion for Order to Establish a Qualified Settlement Fund (Doc. 112)[1].

For the following reasons, Plaintiff's Motion to Withdraw Attorney (Doc. 23) is

---

[1]   The Court notes that neither Plaintiffs nor their attorneys issued a response to Defendants' Motion to Deny as Moot Plaintiff's Motion for Order to Establish a Qualified Settlement Fund (Doc. 104). Likewise, the Court notes that Defendants did not issue a response to Plaintiffs' Motion to Withdraw Motion for Order to Establish a Qualified Settlement Fund (Doc. 112). Upon further review, the Court finds the Plaintiffs' motion to render moot Defendants' motion. *See infra* Section V.

**DENIED**; Plaintiffs' Motion for Order to Establish a Qualified Settlement Fund (Doc. 72) is **DENIED AS MOOT**; Plaintiffs' Motion for Order Approving Plaintiffs' Distribution of Judgment (Doc. 73) is **DENIED AS MOOT**; Attorney Stanley B. Broussard's ("Attorney Broussard") Motion to Enforce Contingency Agreement (Doc. 82) is **GRANTED**; Plantiffs' Amended Motion for Order Approving Plaintiffs' Distribution of Judgment (Doc. 92) is **DENIED**; Plaintiffs' Motion to Withdraw Motion for Order to Establish a Qualified Settlement Fund (Doc. 112) is **GRANTED**; and Defendants' Motion to Deny as Moot Plaintiffs' Motion for Order to Establish a Qualified Settlement Fund (Doc. 104) is **DENIED AS MOOT**.

**DISCUSSION**

## I.    PROCEDURAL SUMMARY

On August 17, 2005, Defendants made a Rule 68 Offer of Judgment in the amount of $5,000,000.00 which Plaintiffs, through Attorney Cuffie, accepted on August 29, 2005.  (Docs. 62, 65).  On September 7, 2005, Plaintiffs made a Motion for an Order to Establish a Qualified Settlement Fund (Doc. 72) and a Motion for an Order to Approve Plaintiffs' Distribution of Judgment. (Doc. 73).  The same day, Attorney Broussard made his Motion to Enforce Contingency Agreement (Doc. 82).

On September 8, 2005, the Court conducted an evidentiary hearing on the pending motions, at which time the Court advised as to the matter of the offer of judgment, that it was not satisfied a complete acceptance of judgment could be made by Plaintiff Stanley Floyd as Administrator of the Estate of Jasmine Floyd.  (Docs. 84-86; *see generally* Doc. 100).  The Court instructed the parties to confer as to whether the offer of judgment would remain open; and to file briefs regarding the estate issue and the issue of withdrawal of Attorney Broussard as counsel. *Id*.

On September 22, 2005, Plaintiffs filed an Amended Motion for Order to Approve Plaintiffs' Distribution of Judgment.  (Doc. 92).  Thereafter, on October 11, 2005, Plaintiffs filed Notice of Filing of Order of Probate Court of Harris County, Texas (Doc. 101), followed by the

2

submission of said Orders on January 25, 2006. (Docs. 106-111).  Defendants filed a Motion to Deny as Moot Plaintiffs' Motion to Establish Qualified Settlement Fund (Doc. 104) on January 20, 2006 followed by Plaintiffs' Motion to withdraw the subject motion on February 20, 2006. (Doc. 112).

II.    **FINDINGS OF FACT**

       Upon consideration of the evidence presented, and preponderance of the same, the Court makes the following findings of fact.   On December 31, 2003, in Calhoun County, Georgia, a motor vehicle accident occurred between Defendant Tim Melsness and an automobile driven by Karl Floyd, in which Plaintiffs Stanley Floyd, Delisa Floyd, Ebonie Floyd, Kalyn Floyd, Xavier Floyd, and Jasmine Floyd (collectvely, "Plaintiffs") were passengers.  The subject accident resulted in the death of Jasmine Floyd and personal injuries and consequent damages to Stanley Floyd, Delisa Floyd, Ebonie Floyd, Kalyn Floyd, and Xavier Floyd.  At the time of the accident in question, Plaintiffs Stanley Floyd and Delisa Floyd were married.  At the same time Plaintiffs Jasmine Floyd, Kalyn Floyd, and Xavier Floyd were minor children of Plaintiffs Stanley Floyd and Delisa Floyd.  Plaintiff Ebonie Floyd was an adult child of Plaintiffs Stanley Floyd and Delisa Floyd.  The Plaintiffs are all residents of Houston, Texas.  (Doc. 1).

       After the accident, in January 2004, the surviving Plaintiffs returned to Houston, upon which time, Karl Floyd, Plaintiff Stanley Floyd's brother, introduced Attorney Broussard and Attorney Toni Scott-Jones ("Attorney Scott-Jones") to Plaintiffs.  Soon thereafter,  Plaintiffs entered into a written contract with Attorney Broussard and his firm, Broussard & Associates, P.C., (alternately, "Broussard & Associates" and "the Broussard Firm), under which Plaintiffs hired Attorney Broussard as their legal representative in connection with the aforementioned accident.  (Doc. 100, pp. 73-74, 170, 186-188).   As Plaintiffs' legal representative, Attorney Broussard assisted Plaintiffs in arranging medical treatment for injuries sustained in the aforementioned automobile accident.  In pursuit of securing medical treatment, Attorney Broussard entered into letters of protection, through which he assured medical providers of

payment.  (*See* Doc. 86, Exhs. 8, 9; *see also* Doc. 100, pp. 34-35, 46, 175, 199).

Around the same time, Jennifer and James Brown, Plaintiff Stanley Floyd's sister and brother-in-law, introduced Attorney Thomas Cuffie to Plaintiffs.  (Doc. 100, p. 82).  Plaintiff Delisa Floyd felt more comfortable working with Attorney Broussard and the Broussard Firm while Plaintiff Stanley Floyd felt more comfortable working with Attorney Cuffie and his firm, Cuffie & Associates, P.C. ("Cuffie & Associates").  As a compromise,  Plaintiffs decided to work with both firms and instructed Attorneys Broussard and Cuffie to work out the details of their joint representation of Plaintiffs. (Doc. 100, p. 88, 118).

Thereafter, on January 20, 2004, Attorney Cuffie sent via fax a letter entitled "Agreement of Understanding for the Representation of Stanley and Delisa Floyd & Family and Karl Floyd," (hereinafter, "Letter Agreement"), in which Attorney Cuffie memorializes a series of telephone conversations between Attorneys Broussard and Cuffie regarding said attorneys' co-counsel relationship.  (Doc. 86, Exh. 2; Doc. 114; *see also* Doc. 86, Exh. 7).[2]  Attorneys Broussard, Cuffie, Scott-Jones and Kimelyn M. Missouri, an attorney with Cuffie & Associates at the time of the Agreement's execution, signed the document.  *Id*.  Thereafter, starting in February 2004, Attorney Broussard filed initial probate documents for the letters of administration for the estate

---

[2]     In relevant part, the Letter Agreement provides:

    2.        ...Cuffie & Associates, P.C., and [Attorney Cuffie] will serve as the lead counsel as Georgia law is controlling;

    3.        The lead counsel will be the person who is the final decision maker on any issue regarding the investigation, research, litigation, and trial of the case;

    4.        That together [Attorneys Broussard and Cuffie] would agree to charge a flat contingent fee of 33 1/3% plus expenses to the Floyd family for our joint representation;

    5.        The fee breakdown for the firms Cuffie & Associates, P.C., and Broussard & Associates shall be 62% and 38% respectively.

    6.        That the Broussard firm shall focus primarily upon generating and coordinating damage witnesses in Houston (i.e. physicians, therapists, etc.) as well as the probate aspect of the work to be done and other damage witnesses that are not health care professionals;

    7.        That Cuffie & Associates, P.C. will focus in on the liability (i.e. the acquisition of experts, interviewing scene witnesses and health care witnesses as well as coordinating discovery through documents, and depositions); and

    8.        [Attorneys] would speak with one voice when it comes to corresponding with the family.  (Doc. 114, Exh. C).

of Jasmine Floyd.  (*See* Doc. 86, Exh. 6; Doc. 100, pp. 19-20).  Attorney Broussard also gathered copies of Jasmine Floyd's school and medical records; and medical records for the surviving Plantiffs.  *Id.*  Attorney Broussard regularly corresponded with Cuffie & Associates and kept them abreast of his progress in securing witness statements, letters of protection, and settling Jasmine Floyd's estate.  (*See, e.g.,* Doc 86, Exhs. 4-6).

On April 6, 2004, Attorneys Broussard and Cuffie signed a second agreement (hereinafter, "Attorney/Client Agreement") with Plaintiffs Stanley Floyd, Delisa Floyd, Ebonie Floyd, Stanley and Delisa Floyd as legal guardians and natural parents of Kalyn Floyd, Stanley and Delisa Floyd as legal guardians and natural parents of Xavier Floyd, Stanley and Delisa Floyd as surviving natural parents of Jasmine Floyd, and Stanley Floyd as personal representative of the estate of Jasmine Floyd.   The Attorney/Client Agreement names Plaintiffs as "Clients", "the Law Firm of Cuffie & Associates, and especially Thomas F. Cuffie" as "Attorney," and, while not specifically naming Attorney Broussard or Broussard & Associates, P.C. as co-counsel, "acknowledge[s] the existence of a co-counsel relationship between Cuffie & Associates and the Broussard Firm."  (Doc. 114, Exh. D; *see also* Doc. 91).

Paragraph III of the Attorney/Client Agreement sets forth a contingency fee arrangement, by which Plaintiffs agree to pay Attorney thirty-three and 1/3 percent (33 1/3%) of the gross recovery plus expenses.  *Id*.  Paragraph IV provides that Attorney will advance all costs in connection with the subject representation, with Attorney to be reimbursed out of the recovery before any distribution of fees.  Paragraph V(1) establishes that Attorney Cuffie is the lead counsel "with sole authority to negotiate with representatives of the Defendants including, but not limited to claims adjusters, mediators, defense counsel, and any other person or entity." *Id*. Paragraph V(2) provides:

> [t]hat following appropriate consultation with the Client and Co-counsel, Thomas F. Cuffie and the law firm of Cuffie and Associates, P.C., shall have authority to make all final judgments and decisions concerning legal strategy, investigations, discovery,...the role of associated counsel or co-counsel..."Consult" or "consultation" denotes communication of information sufficient to permit the Client to appreciate the significance of the matter in question.

*Id.*

Paragraph VI(a) divides the attorney fees set out in Paragraph III, in the percentages of 62% for Attorney Cuffie and his firm and 38% for Attorney Broussard and his firm.  Paragraph VI(b) divides the work responsibilities between the Attorneys along the same percentages.  Paragraph VI(g) provides that "[t]he Broussard firm shall advance all costs as defined in Paragraphs III and IV of this Agreement.  Reimbursement of these expenses shall likewise be treated as prescribed in Paragraphs III and IV herein."  *Id.*

In Paragraph VII(4), Plaintiffs agreed to allow Attorney Cuffie to determine the appropriate venue for the filing of any lawsuit and specifically authorized Attorney Cuffie to file a lawsuit in this District.   In the event of Attorney's withdrawal, for Plaintiffs' non-compliance with the Attorney/Client Agreement or at Plaintiffs' request, Paragraph VII entitles Attorneys to either:

> (a)    compensation calculated at a liquidated amount of 33 1/3% of all settlement proceeds or settlement offers which have resulted from said Attorney's/Co-Counsel's efforts at the time of the withdrawal, plus the amount of expenses paid in advance by said Attorney and Co-Counsel, or
>
> (b)    the reasonable value of the services rendered up to the date of withdrawal or discharge, which is calculated by the prevailing hourly rate plus the amount of expenses paid in advance by said Attorney and Co-Counsel.
>
> *Id.*

Thereafter, Attorney Broussard sent Cuffie & Associates authenticated copies of school and medical records for Jasmine Floyd via certified mail according to the terms of the Attorney/Client Agreement.  Cuffie & Associates received the same on April 12, 2004. (*See* Doc. 86, Exh. 5).  Attorney Broussard also sent Cuffie & Associates then-existing medical records for the surviving Plaintiffs according to the terms of the Attorney/Client Agreement. Cuffie & Associates received the same on April 22, 2004.  (*See* Doc. 86, Exh. 4; *see also* Doc. 100, pp. 22, 59, 165-166, 215-217).

In May 2004, Attorneys Broussard and Cuffie met in person for the first time.   After this meeting, on May 14, 2004, Attorney Broussard sent Attorney Cuffie a letter via fax requesting copies of accident reports, witness statements, and letters exchanged with Defendant Travelers.

(*See* Doc. 86, Exh. 3).  Attorney Cuffie did not respond to Attorney Broussard's letter.  (*See generally* Doc. 100, p. 157-162).  On September 20, 2004, Attorney Broussard sent Attorney Cuffie a letter via fax seeking an update of the case so that he could finalize the appointment of Plaintiff Stanley Floyd as administrator of the estate of Plaintiff Jasmine Floyd.  (*See* Doc. 86, Exh. 1).  Although he claims to have communicated with and made numerous production requests of Attorney Broussard during this time period, Attorney Cuffie was unable to produce any documentary evidence of said communications, either at the September 8, 2005 hearing or thereafter, or otherwise identify any date where he made such communications or requests.  (*See* Doc. 100, pp. 19-21, 155-156).

On or around early October 2004, Attorney Cuffie sent Defendant Travelers a demand letter and settlement offer.  (*See* Doc. 100, pp. 156-160, 191).  On October 12, 2004, Plaintiffs, through Attorney Cuffie, filed their Complaint in the instant lawsuit.  (Doc. 1).  Attorney Cuffie did not consult with Attorney Broussard regarding the submission of the demand letter, filing the complaint, or regarding case strategy, generally.  (*See* Doc. 100, pp. 156-159, 168).  Furthermore, Attorney Cuffie did not send Attorney Broussard a copy of the demand letter, notice of the filing of the Complaint, or the Complaint itself. *Id*.  Some time thereafter, Attorney Broussard learned of the filing and contacted Cuffie & Associates to request a copy.  Neither Attorney Cuffie nor his firm responded to Attorney Broussard's request.  (Doc. 100, pp. 156).

On November 22, 2004, Attorney Spence sent Attorney Broussard a letter ("November 22 Letter") purporting to terminate the co-counsel relationship.  (*See* Doc. 114, Exh. E).  In relevant part, Attorney Spence stated in the November 22 Letter:

> Section V of the Attorney-Client Agreement ("Agreement") gives Cuffie & Associates sole **"authority to make all final judgments and decisions concerning. . . the role of associated counsel or co-counsel."** In reliance on this provision we have approached Stanley Floyd, Delisa Floyd, and Eboni[e] Floyd and have informed them that we are immediately releasing your law firm from its co-counsel role and limiting your law firm's role in the prosecution of any matters encompassed under the Agreement to Stanley Floyd's appointment as administrator of the Estate of Jasmine Floyd. Of course, it remains your law firm's decision whether to continue in this capacity.
> *Id*. (emphasis in original).

Attorney Spence further stated in the November 22 Letter:

> Notwithstanding that the Clients' approval is not required under the Agreement, **let me state for the record** that the Clients did not object to this final judgment and decision by Cuffie & Associates, and indeed approved it.
> *Id*. (emphasis added).

Attorney Spence concludes the November 22 Letter by stating that the Broussard Firm will be entitled to *quantum meruit* compensation.  *Id*.  Nowhere in the November 22 Letter did Attorney Spence inform Attorney Broussard of the cause for which he was purportedly terminated.  *See id. generally*.

On November 23, 2004, Attorneys Broussard and Spence conversed by telephone, after which Attorney Spence sent a follow-up letter ("November 23 Letter") the same day.  (Doc. 114, Exh. F).  In the November 23 Letter, Attorney Spence stated, in relevant part:

> First, [Cuffie & Associates] consider [the Broussard Firm's] representation of [Plaintiffs] terminated, except to the extent that [the Broussard Firm] decides to continue to pursue the probate court matter seeking to have Stanley Floyd appointed as administrator of Jasmine Floyd's estate.
>
> Second, [Cuffie & Associates] must insist that [the Broussard Firm] terminate contact with [Plaintiffs] regarding the alteration of your law firm's role...As I pointed out to you more than once during our 11/23/04 conversation **it was our law firm that initiated and pursued a change in your law firm's role, not Stanley, Delisa or Ebonie Floyd**.
> *Id*. (emphasis added).

Although Attorney Spence states that Plaintiffs approved the termination of Attorney Broussard effected by Attorney Spence's letter, according to the testimony of Plaintiff Delisa Floyd, Plaintiffs were unaware of the purported November 2004 termination letters, having been under the impression prior to the September 8, 2005 hearing, that any release of Attorney Broussard was commenced only after a December 2004 meeting between Attorney Cuffie and Plaintiffs Stanley and Delisa Floyd.  (Doc. 100, pp. 79-81). [3]   In fact, on December 8, 2004, after the letter

---

[3]      Question:                    Or, no, you wouldn't be surprised? You would not be
                                        surprised to find out that he sent the letter before Mr.
                                        -- before you actually terminated Mr. Broussard?

         Mrs. Delisa Floyd:          Yes, I would be surprised. I mean, yes.

exchanges between Attorneys Broussard and Spence, Plaintiff Stanley Floyd appeared with Attorney Broussard at probate court in Houston and signed Attorney Broussard's notice of counsel. (Doc. 100, pp. 119; *see also* Doc. 58).   Thereafter, on December 13, 2004, Attorney Broussard filed a pro hac vice petition in this Court to appear in this matter.  (*See* Docket *generally*).

At some time between November 23, 2004 and December 18, 2004, Attorney Cuffie summoned Plaintiffs Stanley and Delisa Floyd to Georgia for a status meeting about the case. Attorney Cuffie did not notify Attorney Broussard of said meeting.  (Doc. 100, p. 29, 79, 219). On or about December 18, 2004, Attorney Cuffie met with Plaintiffs Stanley and Delisa Floyd regarding the co-counsel relationship between he and Attorney Broussard.  (Doc. 100, pp. 79-80; *see also* Doc. 58).  Attorney Broussard was neither informed about nor invited to this meeting. (Doc. 100, pp. 29, 215, 216, 219).   At this meeting, Attorney Cuffie procured a third agreement entitled "Authorizations for Release of Broussard Firm," (hereinafter, "Release Agreement"), which purported to 1) terminate the involvement of Attorney Broussard and Broussard & Associates in the instant action; 2) reduce the contingency fee from thirty-three and 1/3 percent (33 1/3%) which was to have been shared between Cuffie & Associates and Broussard & Associates to 20% percent to be paid only to Cuffie & Associates; and 3) increase Plaintiffs' net recovery from sixty-six and 2/3 percent (66 2/3%) to eighty percent (80%).  (Doc. 23, Exh. A). Plaintiffs Stanley Floyd and Delisa Floyd signed the Release Agreement.  *Id.*   Plaintiff Ebonie Floyd did not sign the document.  *See id.*   Thereafter, on December 20, 2004 Attorney Cuffie

---

| | |
|---|---|
| Question: | Let me say it this way. Did you know that [Attorney Spence] sent the letter before you terminated Mr. Broussard? |
| Mrs. Floyd: | No. |
| Question: | Did not? |
| Mrs. Floyd: (Doc. 100, p. 81). | I did not know. |

9

sent Attorney Broussard a third letter ("Release Letter") informing Attorney Broussard of his termination from this case, requesting among other items that Attorney Broussard withdraw his pro hac vice petition of December 13, 2004. (Doc. 23, Exh. B).

After receiving the Release Letter, Attorneys Broussard and Scott-Jones contacted Plaintiffs Stanley and Delisa Floyd about the purported release.  (Doc. 100, pp. 175-176; *see* Doc. 58).  Plaintiffs Stanley and Delisa Floyd requested Attorneys Broussard and Scott-Jones bring all their files on the case.  *Id*.  Attorneys Broussard and Scott-Jones complied with their clients' request; and met with Plaintiffs Stanley and Delisa Floyd at their home, at which time they presented Plaintiffs Stanley and Delisa Floyd with four boxes of files.  (Doc. 100, pp. 126, 128-29, 134, 136, 145).  Plaintiff Stanley Floyd recalls examining some but not all of the documents contained within the four boxes.  (Doc. 100, pp. 126, 135).  At this point, Plaintiff Stanley Floyd allegedly stated that he did not wish Attorney Broussard or the Broussard Firm to be disassociated with this litigation.  (Doc. 100, p. 219-220).  Plaintiff Delisa Floyd testified at the September 8, 2005 hearings that she does not recall these conversations, but neither confirms nor denies the same.  (Doc. 100, pp. 88-90).

Attorney Cuffie prepared a second document entitled "Termination of Attorney-Client Relationship with the Broussard Firm for All Probate-Related Matters" ("Probate Release"), which, according to its title, purported to release the Broussard Firm from its representation of Plaintiffs at probate court. (Doc. 23, Exh. C).   Plaintiffs Stanley and Delisa Floyd signed the Probate Release on January 14, 2005.  *Id*.   On February 9, 2005, Attorney Cuffie sent Attorney Broussard a fourth letter, in which he reiterates his claim that Attorney Broussard was withdrawn from the instant case and the related probate proceedings. (Doc. 23, Exh. D).  Six days later, on February 15, 2005, Attorney Cuffie wrote Attorney Broussard, alleging that he and his firm never received any copies of letters of protection sent by Attorney Broussard on Plaintiffs' behalf, but nevertheless Attorney Cuffie was sending a form letter to said providers to discharge Attorney Broussard from his duties under said letters of protection.  A copy of the form letter was

10

attached. (Doc. 23, Exh. E).  On March 15, 2005, Attorney Cuffie sent Attorney Broussard copies of the actual letters sent to the medical providers purportedly discharging him of liability for Attorney Broussard's letters of protection.  (Doc. 23, Exh. F).  On May 26, 2005, Attorney Cuffie prepared and sent to Attorney Broussard a draft of a motion to withdraw as pro hac vice counsel. (Doc. 23, Exh. G).  Said motion was never filed in this Court. (*See* Docket *generally*).  On June 13, 2005, Attorney Cuffie sent Attorney Broussard a final letter noticing Attorney Broussard of the filing of the instant Motion to Withdraw as Attorney.  (Doc. 23, Exh. I).

While Attorneys Broussard and Cuffie continued their correspondence regarding the dismissal of the former, discovery in this case proceeded according to the schedule agreed to by Defendants' counsel and Attorney Cuffie.  (*See* Docs. 12-22).  Interrogatories, requests for document production, subsequent productions, and depositions were conducted all without the involvement of Attorney Broussard.  (Doc. 100, pp. 227-229).  At all times relevant to the aforementioned discovery related matters and subsequent filings, Attorney Broussard was a counsel-of-record in this case. (*See* Docket *generally*).

## III.   LEGAL ANALYSIS

Plaintiffs move the Court to withdraw Attorney Broussard as counsel in the above-captioned action, for sanctions against Attorney Broussard, and for attorney fees to Cuffie & Associates for drafting the instant motion.  (Doc. 23).  To the contrary, Attorney Broussard moves the Court to enforce the contingency agreement(s) between Plaintiffs, Cuffie & Associates, and Attorney Broussard.  (Doc. 82).

At issue is whether Attorney Broussard was actually terminated from involvement in this case according to the terms of the Attorney/Client Agreement of April 6, 2004 ("Attorney/Client

Agreement"). This is a diversity action to which Georgia substantive law applies. (*See* Doc. 1).[4] Essential to the determination of this issue is whether Plaintiffs or Attorney Thomas F. Cuffie ("Attorney Cuffie") and his firm Cuffie & Associates effected the alleged termination. Under Georgia law, a client has an absolute right to discharge his attorney. *See generally* Ga. Rules of Prof'l Conduct 1.16 (2000) (emphasis added). An attorney so discharged may not recover the contracted fee, but rather may recover only the reasonable value of the services he provided in *quantum meruit*. Byrd v. Clark, 170 Ga. 669 (1930).

However, where two attorneys have a valid joint representation agreement, neither possesses an absolute right to discharge the other. *See, e.g.*, Camp v. Peetluk, et. al., 262 Ga. App. 345 (2003). Indeed, such agreements between attorneys are enforced according to their terms where such terms are plain and unambiguous. *Id.*; *see also, e.g.,* Bennett v. Burkhalter, 128 Ga. 154, 155 (1907), Robertson v. Eichholz, 218 Ga. App. 511 (1995). Where a party who alleges to have been wrongfully discharged in contravention of the terms of a valid joint representation agreement, said party must show "that he had performed the services in contemplation of the parties at the time the contract was entered into." Bennett, 128 Ga. at 155.

### A.    Legal Effect of the November 22 and November 23 Letters

Upon consideration of the evidence and preponderance of the same, the Court finds that Attorney Spence sent Attorney Broussard the November 22 Letter without Plaintiffs' consent, consultation, or notification. *See supra* Part II at pp. 7-8 (comparing the November 22 Letter to Plaintiff Delisa Floyd's testimony at hearing). Furthermore, the record clearly exhibits Attorney Spence's belief that the Attorney/Client Agreement gave Cuffie & Associates the authority to

---

[4]    The instant action was brought pursuant to 28 U.S.C. § 1332 as Plaintiffs are citizens of Texas, Defendant Tim Melsness is a citizen of Illinois, Defendant Raynor Express Corp. is a corporation operated pursuant to the laws of Illinois, Defendant Raynor Manufacturing Company is a corporation operated pursuant to the laws of Illinois, and Defendant Travelers is a corporation incorporated under the laws of Connecticut and licensed to operate in Georgia; and the amount of controversy, exclusive of interest and costs, exceeds $75,000.00. (Doc. 1). Venue is proper in this District and Division because the events which gave rise to the instant action occurred in Calhoun County, GA, which is located within this District and Division. *Id.*, *see* 28 U.S.C. § 90(b)(5).

unilaterally terminate Attorney Broussard's involvement in this case with or without cause. *Id*. Attorney Cuffie's testimony at the September 8, 2005 hearing further supports that position even more broadly:

> **I took it upon myself** and upon the contract which dictated that I had the authority as lead counsel **to determine the role and the co-counsel**. That's what the agreement states. I took that to mean that **I had the authority to dismiss him with or without the consent of the family**.
>
> (Doc. 100, p. 157) (emphasis added).

The Court finds Attorneys Cuffie and Spence's interpretation of the relevant provision of the Attorney/Client Agreement to be wholly without merit. "Role," as used in Paragraph V(2) of the Attorney/Client Agreement clearly refers to co-counsel's role in the representation of Plaintiff, not his status as attorney for Plaintiff. *See supra* Part II at pp. 7-8. The Court notes that Plaintiffs, and not Attorney Cuffie, hired Attorney Broussard. *See supra* Part II at p. 3. The Court finds that nothing in the Attorney/Client Agreement gives Attorneys Cuffie and Spence or Cuffie & Associates the right to hire attorneys for Plaintiff. Accordingly, neither Attorneys Cuffie and Spence nor their firm possessed the right to discharge attorneys hired by Plaintiff. The right to hire and discharge attorneys remained with Plaintiffs at all times relevant to the instant action. *See, e.g.* Camp, 262 Ga. App. at 349. Furthermore, Plaintiff Delisa Floyd's testimony indicates that neither she nor her husband were aware that Attorneys Cuffie and Spence executed the November Letters before Plaintiffs Stanley and Delisa Floyd signed the Release Agreement. *See supra* Part II at p. 8, n. 2. It is therefore factually impossible that Plaintiffs could have consented to Attorneys Cuffie and Spence's actions despite the attestation made in the November 22 Letter. Accordingly, the Court finds that Plaintiffs did not exercise their right to terminate Attorney Broussard via the November Letters.

Therefore, upon consideration of the evidence and preponderance of the same, the Court finds that Attorneys Cuffie and Spence, on behalf of their firm Cuffie & Associates, and not Plaintiffs, instigated and effected the purported termination of Attorney Broussard from this case.

 Accordingly, the clients' right to terminate counsel with respect to said purported termination is not implicated by the facts of this case.   Instead, proper resolution of the pending motions turns on: 1) whether a valid joint representation agreement exists between Attorneys Broussard and Cuffie; 2) whether, if said agreement is found to exist, Attorney Broussard performed according to the terms of the same; and 3) whether Attorneys Cuffie and Spence terminated Attorney Broussard's involvement with this case in good faith as required by Georgia law, the Georgia Rules of Professional Conduct, and the Local Rules of this Court.  *See generally,* Camp, 262 Ga. App. at 349.

> **B.    Validity of the Letter Agreement and the Attorney/Client Agreement and the Joint Representation Provisions Contained Therein**

No bona fide controversy exists in this case as to the validity and enforceability of the Letter Agreement.  In plain terms, the Letter Agreement establishes Attorney Cuffie as the lead counsel, sets forth the responsibilities of Attorneys Broussard and Cuffie and their respective firms, their relative compensation, the governing law, and the joint manner in which the Attorneys were to communicate with Plaintiffs.  *See supra* Part II at p. 4, n.1.   The Letter Agreement provisions contained the agreed-upon subject matter, consideration, terms, and were mutually assented to by Attorneys Broussard, Cuffie, Morrison and Scott-Jones.  *Id*.   Therefore, upon preponderance of the evidence, the Court finds the Letter Agreement was valid and enforceable upon its execution.  *See, e.g.,* Camp, 262 Ga. App. 345, 349-50 (2003) (where a letter establishing joint representation was held valid and enforceable where it contained all the terms and conditions essential to formation of a valid and binding contract).[5]

There is also no bona fide controversy as to the validity and enforceability of the Attorney/Client Agreement, which while superceding the Letter Agreement, adopts the latter's terms regarding Attorneys Broussard and Cuffie's roles, responsibilities, compensation, and

---

[5]        It should also be recalled that the joint representation was at the instigation and direction of Plaintiffs, not Attorney Cuffie or his firm.  *See supra* Part II at pp. 4.

14

manner of communication with Plaintiffs. *See supra* Part II at pp. 5-6.  Moreover, the Attorney/Client Agreement indemnifies Attorney Broussard and his firm for costs and expenses advanced on behalf of Plaintiffs. *Id.*   Notably, the Attorney/Client Agreement vests Attorney Cuffie, as lead counsel, "with sole authority to negotiate with representatives of the Defendants including, but not limited to claims adjusters, mediators, defense counsel, and any other person or entity," and "**following appropriate consultation with the Client and Co-counsel**, Thomas F. Cuffie and the law firm of Cuffie and Associates, P.C., shall have authority to make all final judgments and decisions concerning legal strategy, investigations, discovery,...the role of associated counsel or co-counsel..." *Id.* (emphasis added).  The Attorney/Client Agreement further defines "consult" or "consultation" as "communication of information sufficient to permit the Client to appreciate the significance of the matter in question." *Id.*

The Attorney/Client Agreement provisions contained the agreed-upon subject matter, consideration, and terms.  The same was mutually assented to by Attorneys Broussard and Cuffie,  Plaintiffs Stanley Floyd, Delisa Floyd, Ebonie Floyd, Stanley and Delisa Floyd as legal guardians and natural parents of Kalyn Floyd, Stanley and Delisa Floyd as legal guardians and natural parents of Xavier Floyd, Stanley and Delisa Floyd as surviving natural parents of Jasmine Floyd, and Stanley Floyd as personal representative of the estate of Jasmine Floyd.  The Court finds that while Plaintiff Stanley Floyd was not the Administrator of the estate of Plaintiff Jasmine Floyd at the time of the Agreement's execution, the Attorneys, Plaintiffs, and Defendants, on numerous occasions prior to and after the Attorney/Client Agreement's execution, acquiesced to Plaintiff Stanley Floyd's putative status as administrator in acting as the representative of the estate of Plaintiff Jasmine Floyd.  Furthermore, the Probate Court of Harris County, Texas approved and ratified the same. (Doc. 105).  The Court, therefore, finds the Attorney/Client Agreement valid and enforceable upon execution.  Accordingly, the Court finds the Attorney/Client Agreement to have superceded the Letter Agreement in as much as the latter formalized the joint representation agreement between Attorneys Broussard and Cuffie and their

respective firms.

**C.    Attorney Broussard's Performance under the Attorney/Client Agreement**

Plaintiffs, through Attorney Cuffie, maintain that Attorney Broussard did not pursue settlement of Jasmine Floyd's estate through the probate court or provide Attorney Cuffie with medical records, conduct witness depositions, and was generally uncooperative with Cuffie & Associates in this case.  (*See generally* Doc. 93; Doc. 100, pp. 152-170).  The evidence as presented to the Court suggests otherwise.

Attorney Broussard presented evidence to the Court which supports a finding that he entered into letters of protection, through which he assured medical providers of payment for services rendered to Plaintiffs.  *See supra* Part II at p. 3.   Additional evidence is before the Court that supports a finding that, starting in February 2004, Attorney Broussard filed initial probate documents for the letters of administration for the estate of Jasmine Floyd.  *See supra* Part II at p. 4.  Attorney Broussard presents additional evidence that supports a finding that he gathered copies of Jasmine Floyd's school and medical records; and medical records for the surviving Plantiffs.  *Id.*  Furthermore, Attorney Broussard presents numerous documents and certified mail receipts, which taken together support a finding that he regularly corresponded with Cuffie & Associates and kept them abreast of his progress in securing witness statements, letters of protection, and settling Jasmine Floyd's estate.  *Id*. at pp. 4-5, 6-7.

Notably, the record supports a finding that Attorneys Cuffie and Spence, and not Attorneys Broussard and Scott-Jones, were nonresponsive and otherwise uncooperative in violation of the joint representation provisions of the Letter and Attorney/Client Agreements. Attorney Broussard provides evidence that he sent Attorney Cuffie a letter on May 14, 2004 requesting copies of  accident reports, witness statements, and letters exchanged with Defendant Travelers.  *Id*. at p. 6.  Attorney Broussard provides evidence that he sent Attorney Cuffie a letter on September 20, 2004, seeking information from Attorney Cuffie so that he could finalize the appointment of Plaintiff Stanley Floyd as administrator of Jasmine Floyd's estate.  *Id*. at p. 7.

Attorney Cuffie presents no evidence that could support a finding that he responded to this or any subsequent letters.  *Id.*  Rather, at the September 8, 2005 hearing, he stated unequivocally that "Broussard is the one under the contract that had the responsibility to forward documents to me. I didn't have the responsibility to forward them to Broussard." (Doc. 100, p. 167).

The record contains further evidence which supports a finding that Attorney Cuffie did not consult with Attorney Broussard regarding the submission of the demand letter, filing the Complaint, or otherwise regarding case strategy as required by the Attorney Client Agreement. *See supra* Part II at p. 7.  Evidence is presented that supports a finding that Attorney Cuffie did not send Attorney Broussard a copy of the demand letter, notice of filing of the Complaint, or the Complaint itself, even after Attorney Broussard contacted his firm and requested the same.  *Id.* Notably, even after Attorney Broussard filed his pro hac vice petition in this case, and the same was approved, Attorney Cuffie continued to conduct his representation of Plaintiffs, including, but not limited to, drafting and responding to interrogatories and requests for document production, conducting depositions, and negotiating and accepting an offer of settlement, without consulting or even informing Attorney Broussard.  *Id.* at p. 10-11.

It is well established Georgia law that "[e]very contract implies a covenant of good faith and fair dealing in the performance of the terms of the agreement...This implied duty requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance.  [W]here the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound by the exercise of good faith. *See, e.g.* Camp, 262 Ga. App. at 349-50.  It is a fundamental tenet of contract law that where "the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance." Robertson, 218 Ga. App. at 513 (*quoting* O.C.G.A. § 13-4-23 (2005)).

In this case, the terms of both Agreements unmistakably contemplate the Attorneys' mutual cooperation for Plaintiffs' benefit.  *See supra* Part II at pp. 4, n.1, 5-6.   Here the Court

17

finds it instructive to note that Attorney Spence's truncation of Paragraph V(2) of the

Attorney/Client Agreement, contained in the November 22 Letter, omits key, operative language.

Compare:

> Section V of the Attorney-Client Agreement ("Agreement") gives Cuffie & Associates sole **"authority to make all final judgments and decisions concerning. . . the role of associated counsel or co-counsel."**
> *See supra* Part II at p. 7 (November 22 Letter) (emphasis in original).

> That **following appropriate consultation with the Client and Co-counsel**, Thomas F. Cuffie and the law firm of Cuffie and Associates, P.C., shall have authority to make all final judgments and decisions concerning legal strategy, investigations, discovery,...the role of associated counsel or co-counsel..."Consult" or "consultation" denotes communication of information sufficient to permit the Client to appreciate the significance of the matter in question.
> *See id*. at p. 5 (emphasis added).

It is apparent from the terms of the Attorney/Client Agreement that Attorney Cuffie and his firm

were to make judgments and decisions only after appropriate consultation with Plaintiffs and

communication, consultation, and cooperation with Attorney Broussard, as co-counsel.

Attorneys Cuffie and Spence's conclusion that the terms of the Attorney/Client Agreement

vested them with unfettered discretion to unilaterally direct the course of the instant litigation is

clearly erroneous and self-serving.   Therefore, upon consideration of the evidence and by

preponderance of the same, the Court finds that the terms of the Attorney/Client Agreement and

the understanding of the Parties, including Plaintiffs Stanley and Delisa Floyd, required

Attorneys Broussard and Cuffie to communicate, consult, and cooperate in handling this case

notwithstanding Attorney Cuffie's authority to make final judgments.

The Court further finds that Attorney Broussard, on numerous occasions, initiated

communication and attempted to consult with and cooperate with Attorney Cuffie in handling the

matters to which he was assigned and in assistance to Attorney Cuffie as to the matters to which

he was assigned.  The Court finds that Attorney Cuffie neither meaningfully initiated nor

responded to communications made by Attorney Broussard; and that the same, along with his

refusal to consult with or even notify Attorney Broussard of the status of this case, frustrated and

made impossible any further effective performance by Attorney Broussard according to the terms of the Attorney/Client Agreement.   Accordingly, the Court finds that to the extent that Attorney Cuffie's non-cooperation prevented Attorney Broussard from performing according to the terms of the Agreement, the same excuses Attorney Broussard's performance.  *See* <u>Robertson</u>, 218 Ga. App. at 513.

### D.      The Nature of the Termination Attempts

Upon consideration of the evidence and by preponderance of the same, the Court finds that Attorneys Cuffie and Spence unmistakably failed to act in good faith: 1) when they attempted to terminate Attorney Broussard via the November Letters; and 2) thereafter, when they sought to modify the Attorney/Client Agreement through the Release Agreement without Attorney Broussard's consent or notice.   More specifically, the Court finds that Attorneys Cuffie and Spence failed to act in good faith when they violated the plain, unambiguous terms of the Letter Agreement and the Attorney/Client Agreement when they unilaterally usurped Plaintiffs' right to terminate their co-counsel and purported to dismiss Attorney Broussard without Plaintiffs' consent.  *See supra* Part III-A.

Moreover, the Court finds that Attorney Cuffie failed to act in good faith and in violation of the Attorney/Client Agreement when he unilaterally summoned Plaintiffs Stanley and Delisa Floyd to a meeting in Georgia with neither consent of nor notice to Attorney Broussard.  *See supra* Part II at p. 9.  Furthermore, the Court finds that Attorney Cuffie failed to act in good faith, in violation of the Attorney/Client Agreement and of basic contract principles when he unilaterally attempted to modify the Attorney/Client Agreement through the Release Agreement without Attorney Broussard's consent or knowledge, while benefitting pecuniarily from said action.  *See generally* O.C.G.A. § 13-4-4; *see also* <u>Continental Cas. Co. v. Union Camp Corp.</u>, 230 Ga. 8, 20-21 (1973) (where a contract provision was held not to have been changed unless all of the original contracting parties concur in such a change).

As Attorney Broussard has neither novated nor otherwise concurred in the changes

purportedly effected by the Release Agreement, the Court finds the same to be null, void, and unenforceable in its entirety.  *See supra* Part II at p. 9.   To be clear, the Court finds the Release Agreement to be null and void because it purports to alter material contract terms without the consent of Attorney Broussard, an original contracting party with an established interest in the Agreement through the actions of his co-counsel.  Therefore, while the Court finds that Plaintiff Ebonie Floyd belatedly consented to the Release Agreement at the September 8, 2005 hearing, the Court finds the same to be irrelevant to its determination of the validity of said Agreement.  It is likewise of no relevant significance that Plaintiff Stanley Floyd's consent to the Release Agreement on behalf of Jasmine Floyd's estate was ratified by the Probate Court.  As the Probate Release and all subsequent letters of termination are predicated upon the validity of the Release Agreement, the Court finds the same to be null, void, and unenforceable in their entirety.

## IV.   CONCLUSION

The Court, having found the foregoing upon consideration and preponderance of the evidence, finds that the legally operative agreement in this case is, and has been at all times relevant to the instant action, the Attorney/Client Agreement of April 6, 2004.  Appropriately, Attorney Broussard is, and has been at all times relevant to the instant action, including at the time of the offer of settlement, co-counsel of record with Attorney Cuffie.  Accordingly, Plaintiff's Motion to Withdraw Attorney (Doc. 23) for the purpose of excluding said counsel from sharing in the proceeds from the offer of judgment is **DENIED**; and Attorney Stanley B. Broussard's ("Attorney Broussard") Motion to Enforce Contingency Agreement (Doc. 82) is **GRANTED**.

The Court further finds that Plaintiffs' Motion for Order to Establish a Qualified Settlement Fund (Doc. 72) and Defendants' Motion to Deny as Moot Plaintiffs' Motion for Order to Establish a Qualified Settlement Fund (Doc. 104) are rendered moot by Plaintiffs' Motion to

Withdraw Motion for Order to Establish a Qualified Settlement Fund (Doc. 112).[6] Accordingly, Plaintiffs' Motion for Order to Establish a Qualified Settlement (Doc. 72) is **DENIED AS MOOT**; Defendants' Motion to Deny as Moot Plaintiffs' Motion for Order to Establish a Qualified Settlement Fund (Doc. 104) is **DENIED AS MOOT**; and Plaintiffs' Motion to Withdraw Motion for Order to Establish a Qualified Settlement Fund (Doc. 112) is **GRANTED**. The Court further notes that Plaintiff's Motion for Order Approving Plaintiff's Distribution of Judgment (Doc. 73) is rendered moot by Plaintiff's Amended Motion for Order Approving Plaintiffs' Distribution of Judgment. (Doc. 92). Accordingly, Plaintiff's Motion for Order Approving Plaintiff's Distribution of Judgment (Doc. 73) is **DENIED AS MOOT**.

However, the Court finds that the distribution schedules proposed in Plaintiffs' Amended Motion for Order Approving Plaintiffs' Distribution of Judgment (Doc. 92) were calculated based on the recovery schedule set forth in the Release Agreement of December 18, 2004. As the Court has found the Release Agreement to be null, void, and unenforceable in its entirety, any distribution schedule based thereupon cannot be enforced and is therefore not approved. More specifically, the Court finds that the distribution schedules at issue were based in relevant part on the invalid release and renegotiation of attorney fees purportedly executed by the Release Agreement. The Court further finds that said renegotiation of fees, if upheld, would result in a reduction of recoverable fees by Attorney Broussard in clear violation of the Attorney/Client Agreement and of Georgia law. To find otherwise would give legal effect to an illegal conversion of property in the form of attorney fees belonging to Attorney Broussard, in hostility to his rights thereto. *See* <u>Camp</u>, 262 Ga. App. at 353. Accordingly, Plaintiffs' Amended Motion for Order Approving Plaintiffs' Distribution of Judgment (Doc. 92) is **DENIED**.

The Court finds it instructive to note that by this Order, it does not intend to prevent or discourage all relevant parties to renegotiate an appropriate disposition consistent this Order.

---

[6]       *See supra* n. 1.

Without specifically commenting on the appropriateness of the offer of judgment, the Court does not suggest that the offer of judgment itself is inadequate or otherwise inappropriate, but rather that the manner in which said judgment was responded to was improper in its purported effects. It would be likewise improper for the Court to approve Plaintiff's acceptance of the offer of judgment thereof at this time.[7] (*See* Docs. 65, 113). Therefore, Approval of Plaintiff's Acceptance of the Offer of Judgment (Docs. 65, 113) is **DENIED**.

Consistent with the findings of fact and conclusions of law made herein, the Court **ORDERS**:

1.      Defendants' Attorneys, if they elect to renegotiate settlement in this case, to consult with Plaintiffs' Attorneys Broussard and Cuffie, and thereafter submit an offer of judgment **within ten (10) days of this Order**;

2.      Plaintiffs' Attorneys Broussard and Cuffie, upon mutual consultation, to draft and resubmit to the Court an amended motion for order approving Plaintiffs' distribution of judgment consistent with the recovery schedule set forth in the Attorney/Client Agreement of April 6, 2004 **within ten (10) days of Defendants' submission of an offer of judgment**, unless otherwise agreed to by all parties to the agreement with respect to attorney fees.

3.      Any further submissions by Plaintiffs in connection with the above-captioned matter shall have attached thereto an attested certification by both Attorneys Broussard and Cuffie of mutual consultation.

---

[7]      The Court notes that the Probate Court of Harris County, Texas approved and ratified the Offer of Judgment (Doc. 65) on behalf of Plaintiffs Kalyn Floyd, Xavier Floyd, and the estate of Jasmine Floyd. (Docs. 105, 107-112). Having found the Offer of Judgment to have been based in relevant part on an invalid release and renegotiation of attorney fees, and therefore improper, the Court finds the Probate Court's approval of the current Offer of Judgment to be likewise without effect with regard to this Court's approval of the offer of judgment and proposed distribution. Any subsequent offer of judgment, should it be made, must be negotiated consistent with this Order. Thereafter, such an offer of judgment must be approved and ratified by the Probate Court before the same may be approved by this Court.

4.      Attorneys Cuffie and Spence are **ORDERED** to pay to Attorney Broussard <u>all</u> attorney fees and costs incurred in connection with litigating the attorney withdrawal dispute.

5.      Attorney Broussard is **ORDERED** to submit an accounting of said attorney fees and costs for the Court's review **no later than twenty (20) days following the termination of the above-captioned action**.  Attorney Cuffie may file a response **within ten (10) days of service** of Attorney Broussard's submissions.

6.Attorney Cuffie is **ORDERED** to provide a copy of this Order to Plaintiffs Stanley Floyd, Delisa Floyd, and Ebonie Floyd, in addition to the Probate Court of Harris County, Texas **within five (5) days of this Order**.  Attorney Cuffie shall thereafter certify to the Court that the aforesaid service has been accomplished as ordered.

SO ORDERED, this ___30th___ day of March, 2006.

___/s/W. Louis Sands_____

**W. LOUIS SANDS, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

23